NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| WALTON MANAGEMENT SERVICES, INC., | : : : : | |
| Plaintiff, | : : | |
| v. | : : | Civil No. 07-3412 (AET) |
| SOUTHEASTERN FREIGHT LINES, INC., et al., | : : : : | **MEMORANDUM & ORDER** |
| Defendants. | : : : | |

THOMPSON, U.S.D.J.

This matter is before the Court upon Defendant Southeastern Freight Lines, Inc's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). The Court has decided this Motion based upon the submissions of the parties and without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Defendant's Motion is granted.

BACKGROUND

A.  Factual Background

Plaintiff Walton Management Services, Inc. ("Walton"), a New Jersey corporation with its principal place of business in New Jersey, identifies, processes, and manages financial incentive portfolios for clients across a number of industries. (D's Mem. in Supp. of Mot. to Dismiss 1; Kalp Cert., Ex. C (Pl.'s Compl., ¶ 3.)) Defendant Southeastern Freight Lines, Inc. ("Southeastern") is both incorporated and maintains its principal place of business in South

Carolina. (Kalp Cert., Ex. E (Lang Aff., ¶ 3.)) Defendant is a general commodities regional carrier that does business in the Southeastern and Southwestern United States. (Id., ¶ 4.) Defendant ships cargo throughout these regions and as far north as Richmond, Virginia. (Id., ¶ 10.) For delivery points north of Richmond, Defendant contracts with another freight company, and receives no revenues from the shipping and delivery of cargo performed by its partner. (Id., ¶¶ 11, 13.) Defendant does not maintain any offices, property, assets, or telephone listings in New Jersey. (Id., ¶¶ 6-7.) Defendant also has no employees, representatives, or other agents in New Jersey. (Id., ¶ 7; Id., Ex. F (Hamrick Aff., ¶ 6.))

In 2006, Plaintiff's representative, Michael Grammel, contacted Defendant's Human Resources Director, Bryan Hamrick, to offer Plaintiff's services to Defendant in identifying and obtaining federal tax credits through the Employee Retention Tax Credit program. (Id., Ex. F at ¶ 7.) Mr. Grammel initiated the business relationship by telephoning Mr. Hamrick, located in Lexington, South Carolina, from an office in Fishers, Indiana. (Id., Ex. F at ¶ 8; Ex. G (Grammel Statement, ¶ 6.)) Mr. Grammel met with Mr. Hamrick at least three times in connection with Plaintiff's efforts to acquire Defendant as a client. The meetings took place twice in South Carolina and once in Pensacola, Florida. (Id., Ex. F at ¶¶ 9-10.) Mr. Grammel engaged in a number of telephone calls and email communications from Fishers, Indiana, with Defendant in South Carolina prior to the execution of the contract. (Id., ¶ 13.) During the negotiations period, Mr. Hamrick participated in a conference call with Mr. Grammel and Gary Smith, Plaintiff's Vice President, who was located in Walton's New Jersey office. (Id., ¶ 12; Ex. G at ¶ 10.)

At the conclusion of negotiations, Mr. Grammel emailed a written contract from his Indiana office to Defendant's office in South Carolina. (Id., Ex. G at ¶ 11; Ex. H (Caldwell Aff.,

¶ 8.)) Mr. Grammel and Lori Caldwell, Defendant's employee, spoke over the telephone and exchanged emails regarding the contract. Ms. Caldwell signed the agreement in South Carolina and returned it to Mr. Grammel in Indiana. (<u>Id.</u>, Ex. H at ¶ 9.) Mr. Grammel sent a copy of the executed agreement to Plaintiff's office in Maryland, (<u>Id.</u>, Ex. G at ¶ 10). Although Plaintiff instructed Mr. Grammel in an email to send the original signed contract to its offices in New Jersey, (Smith Cert., Ex. B.), the record is silent as to whether Mr. Grammel did so. At no time did Mr. Hamrick or Ms. Caldwell travel to New Jersey in connection with the contract. (Kalp Cert., Ex. F at ¶ 11; Ex. H at ¶ 10.)

Following the execution of the contract, Mr. Grammel exchanged emails and telephone calls with Ms. Caldwell and Mr. Hamrick several times. (<u>Id.</u>, Ex. F at ¶ 13; Ex. G at ¶ 15; Ex. H at ¶ 12.) Ms. Caldwell and Mr. Hamrick exchanged a "minimal number" of emails with Plaintiff's employees in New Jersey. These emails relayed Defendant's personnel information to Plaintiff for calculating the tax credits. (<u>Id.</u>, Ex. F at ¶ 14; Ex. H at ¶ 13; Fitterer Cert., Ex. A (Smith Cert., Ex. C.)) Further, Plaintiff's Vice President, Gary Smith, asserts that he "forwarded many e-mail messages" to Ms. Caldwell and Mr. Hamrick that included an identifier listing his New Jersey business address and telephone number. (Fitterer Cert., Ex. A at ¶ 19.)

B.  Procedural Background

On June 21, 2007, Plaintiff commenced this action by filing suit in Superior Court, Law Division in Monmouth County, New Jersey. Service of process was effected upon Defendant on July 6, 2007, in South Carolina. On July 23, 2007, Defendant removed the case to this Court. Defendant now brings this Motion.

APPLICABLE LAW

A. Standard of Review

A court must accept a plaintiff's allegations as true, and construe disputed facts in its favor, when evaluating a motion to dismiss for lack of jurisdiction. Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003). When a defendant raises lack of jurisdiction as grounds for dismissal, the plaintiff has the burden of proving, by a preponderance of evidence, facts to establish that jurisdiction is proper. Cartaret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). A plaintiff may defeat a defendant's challenge of personal jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1222 (3d Cir. 1992) (internal citations and quotation omitted).

B. Personal Jurisdiction

A federal court sitting in diversity applies the jurisdictional rules of the forum state. Fed. R. Civ. P. 4(e); Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001). Accordingly, the Court will apply the New Jersey long-arm jurisdiction statute to this Motion. The New Jersey Supreme Court has interpreted the long-arm jurisdiction statute, N.J. Court Rule 4:4-4, as being co-extensive with the external limits of the Due Process clause, which means that a federal court may assert personal jurisdiction over a non-resident defendant to the extent allowed by the Fourteenth Amendment to the United States Constitution. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).

Whether the Court may constitutionally exercise personal jurisdiction over a defendant is a two-step inquiry. Id. First, a plaintiff must demonstrate that the defendant has "constitutionally sufficient 'minimum contacts' with the forum." Vertrotex Certainteed Corp. v. Consol. Fiber

Glass Prods. Co., 75 F.3d 147, 150 (3d Cir. 1996) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).  Minimum contacts are satisfied where a defendant has "purposefully directed its activities toward residents of the forum" or "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Vertrotex, 75 F.3d at 150 (3d Cir. 1996) (internal citations omitted).  Second, once a showing of minimum contacts has been made, the Court must determine whether exercising jurisdiction over the defendant "would comport with 'traditional notions of fair play and substantial justice.'" Id. at 151 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  Personal jurisdiction can be either general, whereby a defendant may be subject to suit in a forum for any conduct, or specific, where a plaintiff's cause of action against a defendant arise out of his contacts in the forum.  Remick, 238 F.3d at 255.

## DISCUSSION

Plaintiff does not contend that Defendant's contacts with the forum are of a "continuous and systematic" nature such that Defendant would be subject to general jurisdiction by the Court. Helicopteros Nacionales de Colombia, S.A., v. Hall, 466 U.S. 408, 416 (1984).  Thus, the Court only considers the issue of whether specific jurisdiction exists over Defendant.

Plaintiff argues that the contract contains a forum-selection clause that confers specific jurisdiction over Defendant.  The clause is entitled "Situs" and provides that "[t]he Agreement shall be governed by and construed according to State of New Jersey laws."  (Fitterer Cert., Ex. A (Ex. A.))  Notwithstanding the title of this provision, the Court interprets this clause to be one indicating the parties' choice of New Jersey law, rather than a forum-selection clause, because the provision does not designate a venue or forum in which an action to enforce the agreement

will be brought. See Crescent Int'l, Inc. v. Avatar Cmties, Inc., 857 F.2d 943, 944 (3d Cir. 1988) (upholding dismissal by Eastern District of Pennsylvania where parties' contract contained a clause providing that "'any litigation upon any of [its] terms . . . shall be maintained' in a state or federal court in Miami, Florida."). While a choice-of-law clause is a factor to be considered in evaluating whether an nonresident defendant has established minimum contacts with the forum state, it is not dispositive. See Burger King, 471 U.S. at 481 (holding that a choice-of-law provision, by itself, does not confer personal jurisdiction). Having rejected Plaintiff's argument, the Court considers whether minimum contacts exist that subject Defendant Southeastern to personal jurisdiction in New Jersey.

The mere fact that there is a contract between the two parties, one of which is a New Jersey resident, does not support specific jurisdiction over Defendant Southeastern. Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993) ("[A] contract alone does not 'automatically establish sufficient minimum contacts in the other party's home forum.'") (internal citation omitted). Instead, the Third Circuit has stated that, in claims arising from contract disputes, a court should "consider not only the contract but also 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" Vetrotex, 75 F.3d at 151 (quoting Burger King, 471 U.S. at 479).

In this case, Plaintiff solicited Defendant's business and initiated negotiations that led to the formation of the contract. Plaintiff has not refuted Defendant's affidavits showing that negotiations prior to the signing of the contract took place primarily between Mr. Grammel, located in Indiana, and either Mr. Hamrick or Ms. Caldwell, both located in South Carolina.

While there was at least one conference call in which Plaintiff's Vice President, located in New Jersey, participated, this isolated communication does not rise to the level of a minimum contact sufficient to satisfy due process principles.  After the contract was signed, Ms. Caldwell, Defendant's employee, returned the signed agreement to Mr. Grammel.  Ms. Caldwell and Mr. Hamrick continued to communicate with Mr. Grammel.

The Court finds it is more likely than not that Defendant expected to continue dealing with Plaintiff's representative, Mr. Grammel, notwithstanding Plaintiff's Vice President's conclusory assertion that Ms. Caldwell had "full and complete knowledge that all of the work to be performed by Walton Management was to be performed out of its home office in New Jersey." (Fitterer Cert., Ex. A at ¶ 17.)  Nor are the emails sent by Ms. Caldwell on which Plaintiff's employees were copied, or those forwarded by Mr. Smith to Ms. Caldwell and Mr. Hamrick, sufficient to constitute minimum contacts.  See Vetrotex, 75 F.3d at 152 ("[I]nformational communications in furtherance of [a contract between a resident and a nonresident] does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant].") (citing Sunbelt Corp. v. Noble, Denton & Assoc., Inc., 5 F.3d 28, 32 (3d Cir. 1992)).

Thus, the Court finds that Plaintiff has not sustained its burden of showing that Defendant Southeastern has minimum contacts sufficient to be subject to personal jurisdiction in New Jersey.

## CONCLUSION

For the foregoing reasons, and for good cause shown,

IT IS on this 8th day of November, 2007,

ORDERED that Defendant Southeastern Freight Lines, Inc.'s Motion to Dismiss Plaintiff's Complaint for lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) [4] is GRANTED.

          s/ Anne E. Thompson

          _____
          ANNE E. THOMPSON, U.S.D.J.